UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 18-CR-110-T-33CPT

UNITED STATES OF AMERICA,

          Plaintiff,

v.

TRAVELL KINKAY JONES,

          Defendant.

## OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

The Defendant, TRAVELL KINKAY JONES, through undersigned counsel, respectfully files the following objections to the Presentence Investigation Report, (hereinafter "PSR"):

**Release Status:**

Although the PSR notes the Defendant was served with the arrest warrant in this matter on June 18, 2018, it should also indicate that the Defendant also had his Initial Appearance on the instant case pursuant to Rule 5 on June 18, 2018.

**Objections to Criminal History**

Paragraph 58 of the PSR assigned 3 criminal history points as a result of the Defendant's conviction in *United States v. Hernandez, LeCorps et. al.*, Case Number 18-CR-80076-Rosenberg (hereinafter "Palm Beach case"). (PSR at p. 17, ¶ 58). This is incorrect as the instant case and Palm Beach cases are related, overlapping cases

and the heroin mixture possessed by the Defendant as described in paragraphs 15, 16, 19 and 20 originated in South Florida and are part of the conspiracy the Defendant was convicted and sentenced for in the Palm Beach case. *Compare, e.g.,* paragraph 59 of the Defendant's Palm Beach PSR with paragraph 16 of the instant case PSR. Indeed, the drug transaction described in these two paragraphs is the same; the heroin mixture is the same, the supplier is Mr. LeCorps (a co-defendant in the Palm Beach case), and the intended recipient is Mr. Lang (a co-defendant in the instant case). Likewise, the drugs discussed in paragraph 19 of the PSR also originated in West Palm Beach and, as the PSI makes clear, were being returned to the Defendant who traveled there to retrieve them. (PSR at p. 7, ¶ 19).

Chapter Four of the United States Sentencing Guidelines governs the calculation of criminal history. As the very first section of this chapter makes clear, three criminal history points are added "for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). However, criminal history points are only assessed pursuant to this Chapter for prior unrelated convictions. This is because "[t]he term 'prior sentence' means any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." U.S.S.G. §4A1.2(a)(1). The Sentencing Guidelines further describe "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of §1B1.3 (Relevant Conduct). U.S.S.G. §4A1.2 comment. (n. 1).

Prior sentences which are "part of the instant offense," or part of an effort to avoid detection of responsibility for the charged offense, are not included in the criminal history calculation. An offense is part of the instant offense if it qualifies as relevant

conduct under U.S.S.G. § 1B1.3. U.S.S.G. § 4A1.2 comment. (n. 1). *See also, United States v. White*, 335 F.3d 1314 (11th Cir. 2003). Here, the offense conduct section of the PSRs generated for both the instant case and the Palm Beach case describe drug transactions between Lang, Jones, and LeCorps that serve as relevant conduct for each case. Thus, the Defendant should not be assessed three criminal history points for the conviction.

**Objections to Adjustment for Obstruction of Justice**

The PSR recommends a 2-level upward adjustment for alleged obstruction of justice because "[f]ollowing the defendant's arrest, law enforcement intercepted a phone call in which the defendant directed his co-defendant, Lang, to not sell any more narcotics out of his residence because law enforcement was watching him." (PSR at pp. 7-9, ¶¶24 and 32.). Not only is the upward adjustment unwarranted, but the description in the PSR is incomplete and misleading. First, the phone call (which was intercepted on the Palm Beach case wiretap) was not "following the defendant's arrest" as the term "arrest" is typically used in a PSR. Rather, it was following the Defendant's October traffic stop[1] by law enforcement, when he agreed to cooperate with law enforcement instead of being arrested, that he called Lang. And the reason he called Lang was not to warn him and thereby obstruct the government's investigation, but rather to lay down a cover story to explain the seizure and traffic stop in order to further the government's investigation. However, when Palm Beach agents heard the conversation on the wire, (without understanding its context or the Defendant's rationale for making the statement) they immediately contacted Tampa agents to advise them of the call. The

---

[1] The PSR correctly reflects that the Defendant's arrest was in April of 2018.

3

Tampa agents then contacted the Defendant to discuss the matter and requested a meeting which he immediately agreed to and attended.

As it turned out (and as the agents apparently recognized) the Defendant only called Mr. Lang in order to provide a cover story so as not to alienate him during the Defendant's cooperation and while the investigation was ongoing. As a result of the subterfuge, the Defendant was able to <u>thereafter</u> record Lang, on multiple occasions, at the agents' request as part of his cooperation. Clearly, the Defendant's actions that the PSR now describes as obstructive actually advanced the government's investigation rather than impeded it. Furthering the government's investigation in this regard would have been impossible were the Defendant not to have provided a cover story for the stop and seizure. Indeed, the government was even able to retrieve the drugs that Lang removed from his residence by obtaining a search warrant for the residence of Carlton Mallard (a co-defendant who stored drugs for Lang). Thus, there was no material hinderance to the government's investigation. *See, e.g., United States v. Savard*, 964 F.2d 1075 (11th Cir 1992); *United States v. Shriver*, 967 F.2d 572 (11th Cir. 1992); *United States v. Shores*, 966 F.2d 1383 (11th Cir. 1992).

**WHEREFORE**, the defendant's total advisory guideline offense level ought to be a level 27, with a criminal history category of II, and an advisory guideline range of 78-97 months imprisonment.

Respectfully submitted,

**LAW OFFICES OF PAUL D. PETRUZZI, P.A.**
8101 Biscayne Blvd.
Penthouse 701
Miami, FL 33138
Telephone: (305) 373-6773
Facsimile: (305) 373-3832
Email: petruzzi-law@msn.com

By: /s/ Paul Petruzzi
**PAUL D. PETRUZZI, ESQ.**
Florida Bar No. 982059

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 19, 2019, a true and correct copy of the foregoing was furnished by CM/ECF to all counsel of record.

By: /s/ Paul Petruzzi
**PAUL D. PETRUZZI, ESQ.**
Attorney for Defendant